UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>KEVIN LEMAY and JAMES )<br>MCLAMB, )<br>)<br>Defendants ) | Crim. Nos.   1:21-cr-00175-LEW-11<br>1:21-cr-00175-LEW-10 |

## DECISION AND ORDER

Defendants Kevin Lemay and James McLamb move for the dismissal of the solitary charge against them in the multi-defendant, multi-count indictment. Def. Lemay's Amended Motion to Dismiss (ECF No. 298); Def. McLamb's Motion to Join Lemay Motion to Dismiss (ECF No. 301). Lemay and McLamb also contend that the charges against them were improperly joined with the other charges or, alternatively, that they should be relieved from prejudicial joinder. Def. Lemay's Motion for Relief of Misjoinder or to Sever (ECF No. 290); Def. McLamb's Motion to Join Lemay Motion for Relief from Misjoinder or to Sever (ECF No. 299).

### BACKGROUND

The grand jury charged Lemay with Tampering with Documents in violation of 18 U.S.C. § 1512(c)(1) (Count Eight). As alleged, Lemay "altered, destroyed, mutilated, and concealed electronic messages between himself and Bradley Scovil and Derrick Doucette . . . with the intent to impair [the messages'] integrity and availability for use in an official proceeding." Indictment ¶ 14.

1

The grand jury also charged McLamb with Tampering with Documents in violation of 18 U.S.C. § 1512(c)(1) (Count Nine). As alleged, McLamb "altered, destroyed, mutilated, and concealed electronic messages between himself and Derrick Doucette . . . with the intent to impair [the messages'] integrity and availability for use in an official proceeding." Indictment ¶ 15.

Doucette and Scovil are two former Franklin County Sheriff's Deputies who have pleaded guilty to charges of conspiracy to commit honest services fraud. As alleged in Count Four of the indictment, Doucette and Scovil provided law enforcement confidential information to Lucas Sirois in exchange for the promise of partial ownership of a subsidiary of Sirois's marijuana business and did so while in the employ of the Franklin County Sheriff's Department. Indictment ¶ 10. The circumstances that inform Doucette and Scovil's pleas predate those that inform the charges against Lemay and McLamb.

Both Lemay and McLamb (hereafter "Defendants") were employed as law enforcement officers when they engaged in the conduct charged in Counts Eight and Nine. The Indictment does not specify what "official proceeding" Defendants allegedly had in mind when they deleted text messages. The Defendants posit, based on discovery, that the grand jury must have meant to reference the FBI investigation into the marijuana-related activities of the other defendants. The deleted messages all appear to be communications with Doucette and/or Scovil that reveal that the Defendants ran license plate numbers through a law enforcement database and reported back what the database indicated. Doucette and Scovil sought assistance because they thought they were being followed but no longer had access to the database, having left the employ of the Franklin County

Sheriff's Department.  Defendants later decided that they would like to erase their message trails and deleted their messages.  Evidently, the decision to do so was motivated by the discovery that, in July 2020, the government executed a variety of search warrants as part of its continuing investigation into the activities of persons associated with the Shoe Shop marijuana operation and related enterprises and facilities.  The grand jury did not issue an indictment until November 9, 2021.

The larger case is comprised of conspiracy charges involving black market production and sales of marijuana, money laundering, and bank fraud.  Neither Lemay nor McLamb are implicated in any of the conspiracy charges set out in the indictment, including the Doucette-Scovil conspiracy to commit honest services fraud.  Their solitary offense, as alleged, is the destruction of electronic messages exchanged with Doucette and/or Scovil.

### DISCUSSION

Rule 12(b) of the Federal Rules of Criminal Procedure provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1). Among such defenses is "a defect in the indictment," including "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).

The analysis begins with the language of the statute.  *Id.*  The indictment charges violations of 18 U.S.C. § 1512(c)(1).  Section 1512 criminalizes tampering with a witness, victim, or an informant.  After discussing tampering of the murderous, violent, threatening and misleading kinds, the statute provides that "[w]hoever corruptly . . . alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the

intent to impair the object's integrity or availability for use in an official proceeding . . . shall be fined under this title or imprisoned not more than 20 years, or both." *Id.* § 1512(c).

Defendants argue that the indictment is defective because it simply parrots the statutory language "official proceeding" without "descending to particulars" to identify the official proceeding the Defendants supposedly affected by destroying their message histories. Defendants maintain that they cannot have violated § 1512(c) because they were unaware of and did not foresee any official proceeding other than the law enforcement investigation. The government responds with a thrust of attenuated reasoning, that the argument is specious because any reader of this grand jury indictment should appreciate that the pertinent official proceeding must be the grand jury proceeding, even though there is caselaw demonstrating that grand juries have indicted persons under § 1512(c) based on the impact of evidence destruction on mere investigations.

> The Defendants' argument is based on the following rule of criminal pleading:
>
> It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars. 1 Arch. Cr. Pr. and Pl., 291. The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent; and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances.

*United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

Based on the first principle of *Cruikshank*, and as punctuated by its literary echo in Kafka's *The Trial*, the indictment should have descended to the most basic particulars to apprise Defendants of the official proceeding the Government had in mind so that the grand jury may understand whether the Government has earned its indictment against Defendants. The Defendants should fare better at the charging stage of a criminal proceeding than did Josef K. The Government cannot indict defendants under this statute based upon official proceedings in the air. This requirement is not ceremonial but rather it assures the most fundamental utility is achieved. This is not merely to inform Defendants of the specific underlying offense, but to assure the Defendants and the Court that the grand jury made its charging decision based on a showing calibrated to an actual indictable offense rather than prosecutorial umbrage over interference with an ongoing investigation or anything else that does not constitute a crime. *See United States v. Murphy*, 762 F.2d 1151, 1153, 1155 (1st Cir. 1985) (Gignoux, J.) (holding that an indictment charging defendants with intimidating a person "with intent to influence the testimony of any person in an official proceeding" was invalid because "it cannot be known what official proceeding the grand jury had in mind or the defendants must be prepared to meet" and because the indictment "did not adequately apprise the defendants of the charges against them"). The significance of the failure to descend to particulars is demonstrated when one considers the nature of the proof required to convict.

Proof of culpability under § 1512(c) entails a nexus requirement. Specifically, the Government must demonstrate that the defendant knew of or foresaw an official proceeding and knew that his actions would affect it. *United States v. Elizondo*, 21 F.4th

5

453, 471 (7th Cir. 2021); *United States v. Friske*, 640 F.3d 1288, 1292 & n.5 (11th Cir. 2011) (collecting cases and drawing an analogy to both *Arthur Andersen LLP v. United States*, 544 U.S. 696, 708 (2005) (prescribing nexus element under 18 U.S.C. § 1512(b)(2)) and *United States v. Aguilar*, 515 U.S. 593, 600–01 (1995) (prescribing nexus element under 18 U.S.C. § 1503)); *see also United States v. Buchanan*, 2023 WL 5352223, at *5 (6th Cir. Aug. 21, 2023). For present purposes, the nexus analysis looks different if one has in mind the investigation's evidence gathering function as compared with the grand jury's function of charging violations of federal law. *See United States v. Sutherland*, 921 F.3d 421, 425 (4th Cir. 2019) ("FBI investigations . . . are not official proceedings . . . ."); *United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013) (same).

Defendants' knowledge about the potential significance of their message history to federal investigators can be inferred. Most law enforcement officers in Defendants' position would appreciate how sharing confidential information with suspects rather than informing on them could affect the course of an investigation. But Defendants' knowledge about the utility of the message history to a grand jury's decision whether to indict the other defendants—and if so which defendants—is much harder to intuit. Since the messages were not evidence of an offense by any other defendant and became evidence for present purposes only upon their destruction, why would Defendants think of their destruction of the messages in terms of affecting a grand jury's ability to indict anyone, assuming they were contemplating a grand jury at all? *See, e.g.*, *Elizondo*, 21 F.4th at 472 (looking for evidence the defendant foresaw that the items destroyed might be used in an official proceeding). The government argues that the question should be put to the trial jury to

6

resolve and that the motion to dismiss is an improper attempt to raise a pretrial evidentiary challenge. However, the problem here is that the generic indictment fails to reassure that the grand jury even contemplated the proper question. Given the failure of the indictment to descend to particulars by identifying the grand jury proceedings, Defendants' Motion to Dismiss will be granted. *Murphy*, 762 F.2d at 1154–55 (remanding with instruction to dismiss the indictment despite conviction).

**B.    Joinder**

Given the ruling on the Motions to Dismiss, the matter of prejudicial joinder is moot.

### CONCLUSION

For the reasons stated, Defendant Lemay's Amended Motion to Dismiss (ECF No. 298) and Defendant McLamb's related Motion to Join (ECF No. 301) are GRANTED. Lemay's Motion for Relief of Misjoinder or to Sever (ECF No. 290) and McLamb's related Motion to Join (ECF No. 299) are DENIED AS MOOT. Counts Eight and Nine of the indictment are DISMISSED.

**SO ORDERED.**

Dated this 18th day of October, 2023

/s/ Lance E. Walker
UNITED STATES DISTRICT JUDGE